## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| OLEG KOSTOVETSKY, individually and on behalf of all others similarly situated, | Civ. No. 15- |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | **JURY DEMAND** |
| AMBIT ENERGY HOLDINGS, LLC, AMBIT MIDWEST, LLC, AMBIT TEXAS, LLC, AMBIT NORTHEAST, LLC, AMBIT NEW YORK, LLC, AMBIT MARKETING, LLC, AMBIT ILLINOIS, LLC, AMBIT CALIFORNIA, LLC, LLC, AMBIT HOLDINGS, LLC, AMBIT NEW JERSEY, LLC, AMBIT MANAGEMENT, INC., AMBIT GROUP, L.P., AMBIT SYSTEMS, INC., A JERE THOMPSON, JR., CHRIS CHAMBLESS, JOHN DOES 1-100, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.    OVERVIEW ...................................................................................................1

II.    JURISDICTION AND VENUE ...................................................................3

III.    PARTIES ......................................................................................................3

    A.    Plaintiffs ...........................................................................................3

    B.    Defendants .......................................................................................4

        1.    Ambit Participants. ................................................................4

        2.    Ambit Consultants: John Does 1-100. ....................................7

IV.    FACTUAL BACKGROUND .......................................................................11

    A.    Energy Deregulation and the Growth of Ambit...................................11

    B.    The Scheme to Defraud .....................................................................13

    C.    Plaintiffs and the Class Were Damaged...............................................18

    D.    Use of Mails and Wires.......................................................................19

V.    CLASS ACTION ALLEGATIONS ...........................................................19

VI.    CAUSES OF ACTION.................................................................................22

COUNT I  VIOLATION OF 18 U.S.C. § 1962(C) (THE AMBIT PYRAMID ENTERPRISE)..22

COUNT II  VIOLATION OF 18 U.S.C. § 1962(D) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(C) ...................................................................................................25

COUNT III  VIOLATION OF COMMON LAW OF UNJUST ENRICHMENT.......................26

PRAYER FOR RELIEF ................................................................................27

## I.    OVERVIEW

1.      "Their new venture would provide affordable electricity and gas, and they agreed that their company would never sacrifice integrity for growth."[1]

- Ambit Energy LLC's Co-Founders, Defendants Jere W. Thompson and Chris Chambless upon the founding of Ambit.

2.      Since its inception, Defendant Ambit Energy Holdings, LLC has done precisely the opposite – in order to achieve tremendous growth, it has sacrificed its integrity by preying upon consumers in the deregulated energy market.

3.      Plaintiff Oleg Kostovetsky ("Kostovetsky"), and the Class defined below, complains of a scheme perpetrated by Defendants Ambit Energy Holdings, LLC, Ambit Midwest, LLC, Ambit Texas, LLC, Ambit Northeast LLC, Ambit New York, LLC, Ambit Marketing, LLC, Jere Thompson, Jr., Chris Chambless (collectively, "Ambit" or "Defendants") in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO") to defraud thousands of individuals by creating, operating and maintaining a pyramid scheme which promises – and fails – to provide affordable electricity and gas to its customers through the utilization of a deceptive marketing campaign.

4.      Ambit takes advantage of deregulation in the retail residential gas and electricity market by aggressive marketing which lures consumers into switching energy suppliers based on offers of "low, competitive rates" and "consistent savings."[2] In an approach known as a "multi-level marketing scheme"[3] or "pyramid scheme," Ambit offers free energy and other perks to

---

[1] http://ww2.ambitenergy.com/about-ambit-energy.

[2] See Rates & Plans, available at: http://ww2.ambitenergy.com/rates-and-plans ("A lot of people only know Ambit for our low, competitive rates. While we're proud to give our Customers the consistent savings they deserve, those who really know Ambit understand low rates are only part of the story. With great service, loyalty rewards and the opportunity to earn Free Energy, Ambit is an amazing overall value.")

[3] A marketing strategy in which the sales force is compensated not only for sales they generate, but also for the sales of the other salespeople that they recruit.

010506-11 769561 V1

customers, which it calls "Consultants," who sign up new customers. Once a customer reaches 15 referrals, they purportedly start earning free energy[4] and other benefits.[5]

5.    Ambit's marketing fails to deliver on its representations. Ambit fails to inform consumers who switch to Ambit that they will see their energy rates skyrocket. Ambit's rates can spike dramatically because, unlike other energy companies, Ambit does not offer its energy at a fixed monthly rate. Instead, like an adjustable rate-mortgage, Ambit's variable energy rates can fluctuate rapidly and have no ceiling.

6.    This information is withheld from consumers who are pitched by aggressive uniform marketing materials given to them by friends or acquaintances acting as Consultants of Ambit. The materials preach consistency and savings while failing to warn customers of the factors affecting Ambit's variable energy rates. In effect, Ambit hedges its exposure to fluctuating energy prices by placing the variable burden onto unsuspecting customers.

7.    This scheme is perpetuated by the "Ambit Pyramid Enterprise" defined as and comprised of: (i) Defendant Ambit Energy Holdings, LLC, its subsidiaries and other employees and agents of Ambit, including, on information and belief, Jere Thompson, Jr., Co-Founder and Chief Executive Officer and Chris Chambless, Co-Founder and Chief Marketing Officer ("Ambit Participants") and (ii) individual defendant consultants including John Does 1-100 who are paid by Ambit to market and recruit new customers to Ambit ("Consultants"). The Ambit Participants conspired with the Consultants to defraud customers through its deceptive and fraudulent marketing campaign.

---

[4] *See* Earn Free Energy, available at: http://ww2.ambitenergy.com/rates-and-plans/ambit-advantages/free-energy.

[5] *See* Earn Travel Rewards, available at: http://ww2.ambitenergy.com/rates-and-plans/ambit-advantages/free-energy.

- 2 -

8.      The Ambit Pyramid Enterprise includes a deceptive marketing campaign which affirmatively misrepresents to customers that they will receive cost savings and lower rates despite knowing that the variable rates and consumers' energy costs can spike at any time resulting in substantially increased monthly energy bills.

9.      Plaintiffs sue on their behalf and on behalf of all persons and entities who are or have been customers of Ambit during the period 2006 to the present to recover their out-of-pocket losses, compensatory damages, punitive damages, and attorneys' fees and expenses under the Racketeer Influenced Corrupt Organizations Act ("RICO") and for the disgorgement of profits under the common law of unjust enrichment.

## II.      JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and 18 U.S.C. § 1964(c), because this action alleges violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

11.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants reside in and conduct business in this judicial district, and because a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in and near this judicial district.

## III.      PARTIES

**A.      Plaintiffs**

12.      Plaintiff Oleg Kostovetsky is a natural person residing in Skokie, Illinois. In or about September 2013, Plaintiff Kostovetsky was approached by an Ambit Consultant regarding switching his energy provider to Ambit. The Consultant presented Ambit's standard marketing pitch. Kostovetsky was promised lower energy bills and consistent savings if he became an

- 3 -

Ambit Consultant and switched to Ambit from his current energy provider. Plaintiff Kostovetsky declined to become a Consultant, but stated he was interested in reduced energy bills. The Consultant assured him that he would nonetheless be eligible for reduced energy bills if he switched. After switching to Ambit, Plaintiff Kostovetsky's bills doubled compared to his rate with his previous supplier. Plaintiff Kostovetsky is paying and has paid increased energy prices during the Class Period, and suffered out-of-pocket losses as a result of Defendants' wrongdoing alleged herein.

**B. Defendants**

    **1. Ambit Participants.**

13. Defendant Ambit Energy Holdings, LLC is a third party electricity and natural gas provider in deregulated markets across the United States. Ambit is a limited liability company incorporated in Texas and headquartered at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202. In 2010, Ambit was named "#1 Fastest-Growing Private Company in America" by *Inc.* magazine.[6] Ambit markets its services through a "direct sales channel of more than 250,000 Independent Consultants."[7]

14. Defendant Ambit Midwest, LLC is a Texas entity which was established in 2013. The sole employee of Ambit Midwest, LLC is Jere W. Thompson Jr., Chief Executive Officer. Ambit Midwest, LLC is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202. Ambit Midwest contracts with Ambit customers in the Midwest, including Illinois.

15. Defendant Ambit Texas, LLC is a Texas entity whose sole employee is Jere W. Thompson Jr., Chief Executive Officer. Ambit Texas, LLC is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

---

[6] *See* About Ambit Energy, available at: http://ww2.ambitenergy.com/about-ambit-energy.

[7] *See* About Ambit Energy, available at: http://ww2.ambitenergy.com/about-ambit-energy.

- 4 -

16.     Defendant Ambit Northeast, LLC, is a wholly owned subsidiary of Defendant Ambit Holdings, LLC and is incorporated in New Jersey. Ambit Northeast is listed by the State of New Jersey Board of Public Utilities as an alternative energy supplier to New Jersey utilities like PSE&G. Ambit Northeast's headquarters are at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202. Ambit Northeast contracts with Ambit customers in the Northeast and the Midwest.

17.     Defendant Ambit New York, LLC is a New York limited liability company and is a wholly owned subsidiary of Defendant Ambit Energy Holdings, LLC. Ambit New York is also located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202. Ambit New York contracts with Ambit customers in New York and New Jersey.

18.     Defendant Ambit Marketing, LLC is owned and operated by Defendant Ambit Energy Holdings, LLC. Ambit Marketing, LLC is a Texas entity and is also located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202. Like the other Defendant companies, Defendant Jere W. Thompson is Ambit Marketing LLC's registered agent. In concert with Ambit Energy Holdings, LLC, Jere W. Thompson, and Chris Chambless, Ambit Marketing LLC develops standard marketing materials and utilizes these materials to market Ambit's energy supply service to customers through a direct sales channel of Consultants.

19.     Defendant Ambit Illinois, LLC is owned and operated by Defendant Ambit Energy Holdings, LLC and is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

20.     Defendant Ambit California, LLC is owned and operated by Defendant Ambit Energy Holdings, LLC and is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

- 5 -

21.     Defendant Ambit Holdings, LLC is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

22.     Defendant New Jersey, LLC is owned and operated by Defendant Ambit Energy Holdings, LLC and is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

23.     Defendant Ambit Management, Inc. is owned and operated by Defendant Ambit Energy Holdings, LLC and is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

24.     Defendant Ambit Group, L.P. is owned and operated by Defendant Ambit Energy Holdings, LLC and is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

25.     Defendant Ambit Systems, Inc. is owned and operated by Defendant Ambit Energy Holdings, LLC and is located at 1801 North Lamar Street, Suite 200, Dallas, Texas 75202.

26.     Defendant Jere W. Thompson is the Co-Founder, Chief Executive Officer, Secretary, and Treasurer of Defendant Ambit Energy Holdings, LLC, Defendant Ambit Midwest, LLC, Defendant Ambit Northeast, LLC, Defendant Ambit Texas, LLC, Defendant Ambit New York, LLC and Defendant Ambit Marketing, LLC. Defendant Jere W. Thompson is a citizen of the State of Texas.

27.     Defendant Chris Chambless is the Co-Founder and Chief Marketing Officer of Defendant Ambit Energy Holdings, LLC, Defendant Ambit Midwest, LLC, Defendant Ambit Northeast, LLC, Defendant Ambit Texas, LLC, Defendant Ambit New York, LLC and Defendant Ambit Marketing, LLC. Defendant Jere W. Thompson is also a citizen of the State of Texas. Defendant Chris Chambless describes himself as "an entrepreneur and storyteller" in an

- 6 -

effort to "acquire residential and small business Customers through a growing base of independent entrepreneurs."[8]

### 2. Ambit Consultants: John Does 1-100.

28.     On information and belief, Defendants John Does 1-100 are either residents of or doing business in this judicial district, are transacting business at premises in this judicial district, and are subject to the jurisdiction of this Court. John Does 1-100 consist of Ambit Consultants.

29.     Ambit offers free energy and other perks to customers or "Consultants" who sign up new customers. Once a customer reaches 15 referrals, they purportedly start earning free energy[9] and other benefits.[10] Ambit states: "If you're like most energy customers, you're probably not used to gifts and rewards from your energy company. But if you're an Ambit Energy Customer, we truly appreciate your business and want to reward you for joining the Ambit family…That's why we've created one of the most attractive customer rewards programs in the industry…Once you sign up, you get to enjoy the benefits of being an Ambit Energy Customer right away!"[11]

30.     Consultants utilize Ambit's marketing materials and training to directly sell energy to new customers. For example, Ambit maintains a website called "Ambit U" which includes training videos, reference materials, and a library of information that Consultants access with a login and password.[12]

---

[8] http://ww2.ambitenergy.com/about-ambit-energy/ambits-leaders/chris-chambless.

[9] *See* Earn Free Energy, available at: http://ww2.ambitenergy.com/rates-and-plans/ambit-advantages/free-energy.

[10] *See* Earn Travel Rewards, available at: http://ww2.ambitenergy.com/rates-and-plans/ambit-advantages/free-energy.

[11] Ambit Advantages, available at: http://ww2.ambitenergy.com/rates-and-plans/ambit-advantages.

[12] https://ambitu.ambitenergy.com/login.

31.     Ambit also maintains other training websites including a website which trains Consultants to "Get Paid to Gather Loyal Customers" and includes topics such as "The Psychology of Gathering Customers," "The 3 Approaches to Gathering Customers," and "The Methodology of Gathering Customers."[13] The website further implores Consultants to "Get Paid to Build a Team of Ambit Energy Consultants" and provides tutorials on the fundamentals of building a sales and marketing organization to sell Ambit energy.[14]

32.     Ambit even provides videos teaching "The Proven Ambit System" which it describes as a "replicable process that allows you and your team to succeed and duplicate that success within Ambit over and over again."[15]



33.     Ambit maintains a channel of more than 250,000 Consultants[16] and provides direct support, guidance, and training to the Consultants to achieve more sales and more "rewards" and "income" for the Consultants. Ambit even implicitly recognizes that it is a pyramid scheme by touting the advantages Consultants possess by not having any material

---

[13] http://www.topambitleaders.com/training.

[14] *Id.*

[15] http://www.topambitleaders.com/the-proven-ambit-system.

[16] http://ww2.ambitenergy.com/about-ambit-energy.

- 8 -

product to sell such as "lotions, potions, pills or powders to stock, inventory and deliver…" and requires an initial investment in exchange for Ambit's support.

34.    Ambit's website states:[17]

Almost every one of us uses electricity or natural gas on a daily basis. That's why Consultants who start a business with Ambit Energy have a strong advantage over traditional network marketing opportunities. Simply by helping friends, family and new contacts save money every month on their energy bills, Ambit Consultants begin earning residual income immediately.

Plus, the investment to get started is minimal, and there is never a renewal fee. And since there are no lotions, potions, pills or powders to stock, inventory and deliver, our Consultants save on costs, avoid hassle and can focus on effectively reaching new Customers.

To help Consultants reach their fullest potential, Ambit has created a smart, easy-to-use Consultant support system designed to provide the business-building tools, guidance and unlimited training Consultants can use every day for achieving greater results. And after the initial investment, this support is absolutely free.

Currently, we offer service in California, Connecticut, Delaware, District of Columbia, Illinois, Massachusetts, Maryland, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Texas and Virginia – with more markets opening up each year.

35.    Consultants who are serious about making additional income can start an independent "business" with Ambit. Ambit categorizes and promotes the Consultants into five levels, including "National Consultant" which is the "elite, top level" that can be achieved by "Ambit Ambassadors who partner with Ambit Corporate to accomplish Ambit's core goal of becoming the 'Finest, Most-Respected Energy Retailer in America.'"[18] Ambit maintains the following "Consultant Levels":

---

[17] http://ww2.ambitenergy.com/start-a-business.

[18] http://www.ambitsuccess.com/about-ambit-energy

- 9 -

## Our Consultant Levels

Ambit Energy Independent Consultants work to grow their business and make progress as they promote through five levels.



**Level 1: Marketing Consultant**

Starting out, Marketing Consultants are learning the details of the business and discovering everything that's possible with the Ambit Opportunity, both for them and their future teams.



**Level 2: Regional Consultant**

When Consultants promote from Marketing Consultant level to reach RC, they are beginning to understand the big-picture potential of their Ambit business while deeply focusing on 5-2-6, setting goals and consistently working toward them.



**Level 3: Senior Consultant**

Upon promoting from Regional Consultant level, Senior Consultants focus more on growing and developing even more as effective leaders as well as building teams of future leaders.



**Level 4: Executive Consultant**

For those promoting from Senior Consultant, reaching EC status means refining focus upon mentoring. This includes developing speaking and training skills to inspire and help the next generation of leaders promote and excel.



**Level 5: National Consultant**

This elite, top level is achieved by our finest Ambit Ambassadors, who partner with Ambit Corporate to accomplish Ambit's core goal of becoming the "Finest, Most-Respected Energy Retailer in America."

36.     The National Consultants are handsomely rewarded by Ambit "for a variety of achievements, from career earnings to recruiting new Consultants to preparing outstanding business presentations."[19]

37.     Ambit has a variety of achievements for this high earning Consultants including a "Millionaire Club" consisting of Consultants who achieve over $1 million in earnings;[20] "Top Income Earners" consisting of the top earning Consultants annually; "Top Recruiters" which recognizes the top recruiters in every state; the "Five-Star Club" which rewards the top performing Consultants with a five star trip to an exclusive destination with the Co-Founders,

---

[19] http://www.ambitsuccess.com/achievements

[20] Approximately 27 of the elite National Consultants have reached the "Millionaire Club" according to Ambit's website. *See e.g.*, http://www.ambitsuccess.com/achievements/millionaire-club.

- 10 -

Defendants Jere W. Thompson and Chris Chambless; "Ambit Pacesetter" which recognizes the Consultant who has added the most Senior Consultants to their Executive organizations; "Ambition A-List" which recognizes the 25 Consultants with the highest point totals during the year's contest period; and "BP Honor Roll" which recognizes Consultants whose business presentations earn a high score.[21]

38.     Ambit's National Consultants drive significant revenue for Ambit and have thousands of customers in their "downline." For example, the top earning National Consultant in 2014, Brian McClure, has over 50,000 customers in his "downline and has generated over $5 million in earnings for Ambit since 2006.[22] National Consultants are paid by Ambit for each Consultant or new customer in their "downline."

39.     Ambit, along with its consultants, forms a hierarchal structure which forms the "Ambit family" and is often referred to as a "team."

## IV.     FACTUAL BACKGROUND

### A.     Energy Deregulation and the Growth of Ambit

40.     In the late 1990's, a number of states, including Illinois, deregulated their markets for the supply of gas and electricity.

41.     For example, in 1997, the Illinois legislature passed the Electric Service Customer Choice and Rate Relief Law ("Rate Relief Act"), as Article XVI of the Illinois Public Utilities Act ("IPUA"), to "introduce competition into the Illinois electricity market."[23] The law allowed for the creation of Alternative Retail Electric Suppliers ("ARES"), which are nonutility entities that "may or may not be affiliated with an existing utility company, and [are] authorized to sell

---

[21] http://www.ambitsuccess.com/achievements.

[22] http://www.ambitsuccess.com/consultants/signup.

[23] *Commonwealth Edison Co. v. Illinois Commerce Comm'n,* 328 Ill.App.3d 937, 939 (Ill. App. Ct. 2002); 220 ILCS 5/16–101 *et seq.*

and market electricity to customers."[24] When a customer contracts with an ARES, a local electric utility still delivers the customer's actual electricity.[25]

42.     Like other ARES, Ambit utilizes the delivery systems of existing utilities like ComEd or Nicor, but charges its own rate to supply the energy. Accordingly, an Ambit customer will have their energy "supplied" by Ambit, but still "delivered" by their existing utility (e.g., Nicor, ComEd).

43.     Ambit was created in 2006 when Defendants Jere Thompson Jr. and Chris Chambless "had a friendly chat about energy deregulation"[26] after certain states deregulated the energy industry and has since grown and surpassed one million active customers.[27] Upon Ambit's creation, Defendants Jere Thompson Jr. and Chris Chambless "agreed that their company would never sacrifice integrity for growth."[28]

44.     By 2012, Ambit introduced service to more than 13 million potential customers by expanding into Massachusetts, Connecticut, and northern California and continuing to add new service areas in New York, Pennsylvania, Maryland and Illinois.[29] Ambit also services customers in Delaware, Rhode Island, Maine, Texas, Virginia, Washington D.C., New Hampshire, and New Jersey – 15 states in total which have deregulated the energy industry.[30]

45.     In May 2013, Ambit announced that it officially surpassed $1 billion in annual revenue, claiming that it provides more than 80 percent electricity and 20 percent natural gas to

---

[24] *Local Union Nos. 15, 51, 702, IBEW v. Illinois Commerce Comm'n,* 331 Ill.App.3d 607, 609 (Ill. App. Ct. 2002).

[25] *Commonwealth Edison Co.,* 328 Ill.App.3d at 939.

[26] http://ww2.ambitenergy.com/about-ambit-energy.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *See* Service Areas, available at: http://ww2.ambitenergy.com/rates-and-plans/service-areas.

- 12 -

residential and commercial clients across the country's deregulated markets. Approximately 94% of Ambit's customers are residential.[31]

## B.     The Scheme to Defraud

46.     Defendants' success comes at the expense of consumers. Using deceptive marketing tactics, Ambit has taken advantage of energy deregulation in states across the country.

47.     Ambit fails to inform consumers who switch to Ambit that they will see their energy rates skyrocket. Ambit's rates can spike dramatically because, unlike other energy companies, Ambit does not offer its energy at a fixed monthly rate. Instead, like an adjustable-rate mortgage, Ambit's variable energy rates can fluctuate rapidly and have no ceiling. This information is withheld from consumers who are pitched by aggressive marketing materials given to them by friends. The materials preach consistency and savings while failing to warn customers of the factors affecting Ambit's variable energy rates. In effect, Ambit hedges its exposure to fluctuating energy prices by hedging and placing the variable burden onto unsuspecting consumers.

48.     Ambit customers' rates and bills consistently increase despite Ambit's assurances and marketing to customers that switching to Ambit will provide savings and lower rates. For example, Ambit's website states: "[W]hile we're proud to give our Customers the consistent savings they deserve, those who really know Ambit understand low rates are only part of the story. With great service, loyalty rewards and the opportunity to earn Free Energy, Ambit is an amazing overall value."[32]

---

[31] *See* Ambit Energy Reaches $1 Billion in Annual Revenue in Only Seven Years, available at: http://ww2.ambitenergy.com/about-ambit-energy/press-releases/ambit-energy-reaches-1-billion-in-annual-revenue-in-only-seven-years.

[32] http://ww2.ambitenergy.com/rates-and-plans.

- 13 -

49.     In its marketing geared towards Illinois customers, Ambit states that it makes "sure our Customers in this great state get the highest level of care and best possible value from their Illinois electricity company…We'll never let the American heartland down."[33]

50.     Ambit's presentation geared towards Consultants further expresses the savings that new customers will obtain upon switching to Ambit:[34]



51.     Ambit explicitly encourages its Consultants to utilize their personal relationships to gain new customers and start earning residual income as a result:[35]



52.     Despite assertions of cost savings, Ambit knows that their rates are variable in nature and will likely spike or increase because Ambit shifts the risks of increased energy prices

---

[33] http://ww2.ambitenergy.com/rates-and-plans/service-areas/illinois-energy-providers.

[34] *See e.g.*, http://www.energyderegulationnewyork.com/Ambit-Opportunity-Texas.pdf.

[35] *Id.*

onto consumers. Yet, Defendants still misrepresents to consumers that their energy prices will likely increase.

53.     As a result of this conduct, Ambit is the subject of an immense amount of criticism and complaints online from both consumers and consumer advocacy organizations. According to the Better Business Bureau ("BBB"), they have addressed and closed 465 complaints lodged and closed against Ambit within the last three years.[36]

54.     The BBB has the following additional information regarding Ambit:[37]

> During the first quarter of 2014 this business has received an increase in complaints. Complaints are regarding billing issues and contract issues. Specifically customers complain about unexpected increases in the cost of the service and unexpected changes in the terms of the contract. In April of 2014, Ambit Energy met with the BBB. The business cooperated with the BBB regarding the pattern of complaints. The business states that due to an extremely cold winter, the usage of energy has increased. As a result, the cost of the service to consumers has increased. Additionally, the business states that it is now only offering adjustable rate contracts.

55.     The numerous complaints by consumers in each state in which Ambit operates consistently allege that Ambit's underhanded policies fail to disclose the variable nature of their rates and often change the rates without their knowledge or assent:[38]

Anonymous, Park Ridge, Illinois, March 15, 2015:

> This company promised a saving if I switch to them.As a result this month I found that I pay for gas 3 times more ($1.05/therm) than if I would pay to NicorGas ($0.35/therm).
>
> When I tried to switch back to NicorGas they told me that it would take 1-2 month. This company offered me to switch to another plan when I will pay $0.38/therm. The question is why they did not do that automatically if the promised saving. Is anybody knows how to return my money?
>
> This month I paid $380.It seems to me that this company cheated many households.

---

[36] http://www.bbb.org/dallas/business-reviews/electric-companies/ambit-energy-holdings-in-dallas-tx-90033973/complaints.

[37] *Id.*

[38] *See e.g.*, http://ambit-energy.pissedconsumer.com/do-not-choose-ambit-20150306604464.html

Tinley Park, Illinois, March 12, 2015:

They said they sent me a letter 24 months ago reminding me to call them so I could extend my savings plan.I either never got this letter or they never sent it: take your pick.

Either way, because I didn't respond to this one letter (no further attempts to reach me were ever made), my rate went to $1.06 per therm. I have been paying this amount for the past 24 months they explain to me.

So for the past 24 months, I have been paying more than 3X what I would be paying had I stayed with Nicor.It will take 2 billing cycles to get my ac't switched back to Nicor so I will have 100$ gas bills instead of $400!

56.     Complaints regarding Ambit's underhanded business practices are extensive and filled with unhappy customers nationwide who feel cheated and defrauded.[39]

\*\*\*

Ambit Energy has been charging me rates that are in excess of 3 times what my local utilities variable rates are. How can a company in good faith advertise energy savings and charge 3 plus times the utilities company's rates? They told me I got a letter to sign up for the guaranteed rates and since I did not respond, they nicely signed me up for their variable rates. A letter that I never saw. There were no follow up phone calls to see why I did not respond, just put me in the position so they could charge me whatever they wanted.

I called the NYS PSC to see if there was anything that could be done so they can't do this to people in the future. Basically they told me that the rates are not regulated by them because it has been deregulated and with their contract they can charge whatever they want. I would like to see a class action lawsuit brought on Ambit Energy to refund money that was scammed from customers.

\*\*\*

Have been an Ambit consumer for several years. My fault for not checking their rates and always wondering why my gas and electric bills were thru the roof. When I finally did a cost comparison with Con Ed, discovered that last year Ambit overcharged me over $1800 for the electric portion of my bill. So angry. When I called Ambit to discontinue my affiliation with them they told me it will take two months and that I was notified by mail that I would be paying a variable rate. It's amazing that no one ever received this letter from them and that they are getting away with this. Someone needs to start a class action suit against them.

\*\*\*

I signed on for Ambit Energy at my business and my home because my son was "selling" the energy and told me what a great deal it was. For the first 18 months it was OK but then my bills started going up and this month I was charged 3X what I usually pay for electric at my business. I called Ambit and was told the same story as I have read above - that they sent a letter to renew the plan. I never received a letter or any other correspondence the whole time I have been with them. I should never have fallen for a company that uses a "get rich quick" scheme to sell its product. If there is a lawsuit happening, count me in.

\*\*\*

---

[39] *See e.g.*, http://www.consumeraffairs.com/utilities/ambit.html

- 16 -

My November and December utility bills were higher than normal but didn't think too much of it. Today I opened my most recent bill and it's more than double! The gas supply charge from Ambit was 0.9281826 per therm....almost 3x national grid!! I went online to research and saw all these complaints. I need to switch asap, this seems very shady. I called but they're experiencing a high call volume. I left my number but already know based on these reviews what I'm going to hear. I don't remember receiving a letter either...if I did I probably thought it was junk mail.

\*\*\*

Whether someone tries to con you into convincing your friends and relatives to switch to Ambit OR tries to con you into savings on gas and electric... you will be sorry if you switch. This is FACT. ESCO's are non-regulated. Meaning they give you this great rate for x amount of months, then without notice, switch you to a DISGUSTINGLY HIGH non regulated rate where you will lose all the money you have saved and more. Don't do it. Stick with NYSEG, CON-ED, etc. They will always give you the lowest rate possible. THEY ARE REGULATED so you do not have to monitor them every month to see if you were suddenly switched to a non regulated scam per KWH rate like AMBIT.

\*\*\*

I was invited to one of their regional 'recruitment' meetings by an acquaintance and was actually shocked that the majority of people seemed to be swallowing their pitch full line and sinker. Their model essentially relies upon a pyramid in which the more people you pull in to join (like a cult) the more money you make. I have no doubt that the originators of the scheme have made some very good money by perpetuating a fraudulent business model. Sorry folks, nothing in life is free. It just doesn't work like that. I actually felt offended that my friend/acquaintance tried to recruit me.

57. Ambit's deceptive practices have been noted by consumer advocacy groups including the Citizens Utility Board which represents the interests of residential utility customers across the state of Illinois.

58. On May 13, 2014, the Citizens Utility Board issued a report, detailing a "115 percent jump in consumer complaints about unregulated electricity suppliers."[40]

59. The report warns Illinois consumers to "watch out for rip-offs in Illinois' fledgling electricity market" and identifies the five biggest problems Illinois consumers are encountering in the third party energy market with companies like Ambit:

1) Exorbitant rates;
2) Low introductory rates that suddenly disappear;
3) Extra fees;
4) Punishing exit fees;
5) High-pressure sales pitches.

---

[40] The Illinois Electric Market, Report (May 13, 2014), available at: http://www.citizensutilityboard.org/pdfs/NewsReleases/20140513_ElectricReport.pdf; *See also* http://www.citizensutilityboard.org/newsReleases20140513_ElectricReportRelease.html

- 17 -

60.     The report concludes that "[t]he market cannot reliably and consistently deliver savings for consumers."[41]

61.     According to Citizens Utility Board, "[R]ight now, it's a buyer-beware electric market in Illinois…We're getting complaints from power shoppers who thought they were signing up for one deal but then got slammed with some of the highest electric rates we've ever seen from alternative suppliers. Illinois' electric market is undergoing major changes right now, and our report shows that customers are paying dearly for it."[42]

62.     Therefore, despite the realities of the market, Ambit continues to deceptively promise what it cannot possibly deliver through its deceptive marketing and high-pressure sales tactics utilized by its army of Consultants.

63.     Ambit's statements are misleading because they highlight that Ambit will save consumers money on their bills but fail to inform consumers that a spike in energy rates can dramatically increase their energy costs.

**C.      Plaintiffs and the Class Were Damaged**

64.     Ambit's statements are misleading because they highlight that Ambit will save consumers money on their bills but fail to inform consumers that a spike in energy rates can dramatically increase their energy costs.

65.     As a result, Plaintiffs and the Class were injured because they believed that they would be charged less for electricity than they were actually charged after switching to Ambit as a provider. Plaintiffs and the Class were charged excessive prices and suffered significant out-of-pocket losses.

---

[41] *Id.*

[42] http://www.citizensutilityboard.org/newsReleases20140513_ElectricReportRelease.html

66.     Thus, Defendants' scheme to defraud has damaged Plaintiffs and the Class, who have borne the entire cost of the variable energy market which is deceptively passed onto them by Defendants.

**D.     Use of Mails and Wires**

67.     Defendants used thousands of mail and interstate wire communications to create and manage the fraudulent scheme and RICO enterprise.  Defendants' scheme involved utilizing a network of Consultants to defraud consumers across the country.

68.     Defendants' use of the mails and wires to perpetrate the fraud involved thousands of communications, including:

        a.      Contacts and related negotiation communications exchanged via the mail, facsimile and electronic mail;

        c.      Communications, including financial payments sent via mail and wire, for the sale and procurement of energy;

        d.      Monthly bills to Plaintiffs and the Class on which Plaintiffs' were excessively and deceptively charged for energy;

        e.      Transmission of misleading and fraudulent marketing materials to Consultants via the mail, facsimile and electronic mail; and

        f.      Receiving the proceeds of the Defendants' improper scheme.

69.     In addition, Defendants' corporate headquarters have communicated by United States mail, telephone and facsimile with various local and regional Consultants in furtherance of Defendants' scheme.

## V.     CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and a Class defined as follows:[43]

---

[43] Plaintiffs' reserve the right to amend the class definition prior to moving for class certification.

- 19 -

> All persons or entities who are or have been customers of Ambit
> during the period 2006 to the present.

71.     Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns, and employees.

72.     The definition of the Class is unambiguous.  Plaintiffs are members of the Class that they seek to represent.  Members of the Class can be identified using Ambit's billing databases that track sales of energy to Plaintiffs and the Class, as well as the charges for energy to Plaintiffs and the Class. Class members can be notified of the class action through publication and direct mailings to address lists maintained in the usual course of business by Ambit.

73.     Class members are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiffs, but it is clear that the number greatly exceeds the number to make joinder impossible. According to Ambit, it currently serves 13 million customers across the country.

74.     Common questions of law and fact predominate over the questions affecting only individual Class members.  Some of the common legal and factual questions include:

>   a.      Whether Defendants engaged in an unlawful scheme to defraud;
>
>   b.      Whether Defendants used the mails and wires to create and manage their unlawful scheme to defraud;
>
>   c.      Whether Defendants violated RICO, 18 U.S.C. § 1962;
>
>   d.      Whether Defendants violated the common law of unjust enrichment; and
>
>   e.      The nature and extent of damages and other remedies to which the conduct of Defendants entitles the Class members.

75.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class members. Similar or identical statutory and common law

violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

76.     The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts – Defendants' misconduct.  In each case Defendants engaged in a scheme to deceptively defraud customers to switch to Ambit with the promise of cost savings and lower rates while knowing that the variable rates were likely to increase customers' bills after switching.

77.     The Class members have been damaged by Defendants' misconduct.  The Class members have paid increased costs for energy often exceeding the costs of their local utility provider, which costs would have been far lower had Defendants' fraud been disclosed.

78.     Plaintiffs' claims are typical of the claims of the other Class members.  Plaintiffs paid for energy as reflected on their monthly bills.

79.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are familiar with the basic facts that form the bases of the Class members' claims. Plaintiffs' interests do not conflict with the interests of the other Class members that it seeks to represent. Plaintiffs have retained counsel competent and experienced in Class action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex Class actions, including RICO class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class members.

80.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class members. The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. Furthermore, it

would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

81.     Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The Class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims and the absence of material differences in the state statutes and common laws upon which the Class members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

## VI.     CAUSES OF ACTION

### COUNT I

### Violation of 18 U.S.C. § 1962(c)
### (The Ambit Pyramid Enterprise)

82.     Plaintiffs incorporate by reference all preceding paragraphs, as if fully set forth herein.

83.     Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

84.     The enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of (i) Defendants, including their employees and agents; and (ii) the Consultants ("Ambit Pyramid Enterprise"). The Ambit Pyramid Enterprise is an ongoing organization that functions as a continuing unit. The Ambit Pyramid Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity. The Defendant "persons" are distinct

- 22 -

from the Ambit Pyramid Enterprise. The Ambit Pyramid Enterprise functions as a continuing unit through a hierarchal structure as reflected in the "Consultant" promotional hierarchy.

85.     The Ambit Pyramid Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of operating a pyramid scheme to defraud customers through deceptive marketing practices, overcharging Plaintiffs and the Class and earning profits therefrom.

86.     Defendants have conducted and participated in the affairs of the Ambit Pyramid Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which includes multiple instances of mail fraud in violation of 18 U.S.C. § 1341, and multiple instances of wire fraud in violation of 18 U.S.C. § 1343, as described above.

87.     The Ambit Pyramid Enterprise engaged in and affected interstate commerce, because, *inter alia*, Ambit Energy contracted with consumers across the country for the supply of energy at costs exceeding billions of dollars, to be delivered by local utility companies to consumers.

88.     Defendants exerted control over the Ambit Pyramid Enterprise, and Defendants participated in the operation or management of the affairs of the Ambit Pyramid Enterprise, through a variety of actions including the following:

      a.     Defendants created and disseminated deceptive marketing materials to be distributed by Consultants to the benefit of the Ambit Pyramid Enterprise.

      b.     Defendants controlled the stream of information disseminated by the Ambit Pyramid Enterprise ensuring that its deceptive marketing was utilized to obtain new customers.

      c.     Defendants, through its Consultants, utilized a multilevel marketing scheme to defraud customers by informing them that they switching energy providers would provide cost savings.

- 23 -

      d.      Defendants utilized a hierarchal promotional structure to reward Consultants who utilized the deceptive marketing scheme to the benefit of the Ambit Pyramid Enterprise.

      e.      Defendants provided Consultants with "business building tools, guidance, and unlimited training" to deceive consumers and operate the affairs to the benefit of the Ambit Pyramid Enterprise.

      f.      Defendants placed their own employees and Consultants in positions of authority and control in the Ambit Pyramid.

89.     As detailed above, Defendants' fraudulent scheme consisted of, *inter alia*: (a) deliberately misrepresenting, and causing others to misrepresent, the cost of energy to Plaintiffs and the Class; and (b) publishing or causing to have published materials containing false information which Plaintiffs and the Class relied on in believing that they would receive cost savings and lower energy prices by switching energy suppliers.

90.     Defendants' scheme and the above described racketeering activities amounted to a common course of conduct intended to cause Plaintiff and others to pay for excessive overcharges for energy on their monthly bills. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiffs' property.

91.     The pattern of racketeering activity alleged herein and the Ambit Pyramid Enterprise are separate and distinct from each other. Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Ambit Pyramid Enterprise.

92.     The causal chain in this case is anything but attenuated. Defendants have always known that, because of the nature of the energy market, Ambit would not bear the costs of increased energy costs but rather would deceptively and fraudulently pass them on to Plaintiffs

- 24 -

and the Class. Defendants' fraudulent scheme is meant to increase their revenues and profits solely at the expense of the Plaintiffs and the Class.

93.     Plaintiffs have been injured in their property by reason of these violations in that Plaintiffs have made thousands of dollars in payments for energy costs that they would not have made had Defendants not engaged in their pattern of racketeering activity.

94.     Plaintiffs' injuries were directly and proximately caused by Defendants' racketeering activity, as described above.

95.     By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT II

### Violation of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c)

96.     Plaintiffs incorporate by reference all preceding paragraphs, as if fully set forth herein.

97.     Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

98.     Defendants have violated section 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the section 1962(c) Enterprise described previously through a pattern of racketeering activity.

99.     As demonstrated in detail above, Defendants' co-conspirators, including but not limited to the Consultants, have engaged in overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including material misrepresentations designed to defraud Plaintiffs of money.

- 25 -

100.    The nature of the above-described Defendants' co-conspirators' acts and material misrepresentations in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

101.    As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiffs have been and are continuing to be injured in its business or property, as set forth more fully above.

102.    Defendants have sought to and have engaged in the commission of and continue to commit overt acts, including the following unlawful racketeering predicate acts:

       a.      Multiple instances of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1342;

       b.      Multiple instances of mail fraud in violation of 18 U.S.C. §§ 1341 and 1346; and

       c.      Multiple instances of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346.

103.    Defendants have sought to and have engaged in the violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting Defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

## COUNT III

### Violation of Common Law of Unjust Enrichment

104.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of itself and members of the Class. To the detriment

- 26 -

of Plaintiffs and members of the Class, Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, *inter alia*, payments for excessive energy costs received as the result of a fraudulent and deceptive marketing scheme.

105.    Defendants have unjustly benefited through the unlawful and/or wrongful collection of, *inter alia*, payments for excessive energy costs received as the result of a fraudulent and deceptive marketing scheme and continue to benefit to the detriment and at the expense of Plaintiffs and members of the Class.

106.    Accordingly, Plaintiffs and members of the Class seek full restitution of Defendants' enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class members request that the Court enter an order or judgment against Defendants including the following:

A.    Certification of the action as a Class Action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiffs' claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages, and appointment of Plaintiff as Class Representative and its counsel of record as Class Counsel;

B.    Damages in the amount of out-of-pocket losses for payments for excessive energy costs received as the result of a fraudulent and deceptive marketing scheme;

C.    Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

D.    Pre-judgment and post-judgment interest on such monetary relief;

E.      Equitable relief in the form of restitution, including restitutionary disgorgement into a fluid recovery fund, to restore monies received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

F.      Other appropriate injunctive or declaratory relief;

G.      The costs of bringing this suit, including reasonable attorneys' fees; and

H.      All other relief to which Plaintiffs and members of the Class may be entitled at law or in equity.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED:  March 26, 2015                    OLEG KOSTOVETSKY, on behalf of himself
                                          and all others similarly situated

                                          By: /s/Steve W. Berman

                                          Steve W. Berman
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1918 Eighth Avenue, Suite 3300
                                          Seattle, WA  98101
                                          Telephone:  (206) 623-7292
                                          Facsimile:  (206) 623-0594
                                          E-mail:  steve@hbsslaw.com

                                          Elizabeth A. Fegan
                                          Thomas A. Ahlering
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1144 West Lake Street, Suite 400
                                          Oak Park, IL  60301
                                          Telephone:  (708) 628-4949
                                          Facsimile:  (708) 628-4950
                                          E-mail:  beth@hbsslaw.com

David Freydin
Timothy A. Scott
LAW OFFICES OF DAVID FREYDIN LTD.
8707 Skokie Blvd.
Skokie, IL 60066-2269
Telephone: (630)-455-0000

010506-11 769561 V1