IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLEG KOSTOVETSKY, individually and on behalf of all others similarly situated,<br><br>　　Plaintiffs,<br><br>vs.<br><br>AMBIT ENERGY HOLDINGS, LLC, AMBIT MIDWEST, LLC, AMBIT TEXAS, LLC, AMBIT NORTHEAST, LLC, AMBIT MARKETING, LLC, AMBIT ILLINOIS, LLC, AMBIT CALIFORNIA, LLC, AMBIT HOLDINGS, LLC, AMBIT NEW JERSEY, LLC, AMBIT MANAGEMENT, INC., AMBIT GROUP, L.P., AMBIT SYSTEMS, INC., A JERE THOMPSON, JR., CHRIS CHAMBLESS, JOHN DOES 1-100,<br><br>　　Defendant. | NO. 1:15-cv-02553 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Ambit Energy Holdings, LLC; Ambit Midwest, LLC; Ambit Texas, LLC; Ambit Northeast, LLC; Ambit Marketing, LLC; Ambit Illinois, LLC; Ambit California, LLC; Ambit Holdings, LLC; Ambit New Jersey, LLC; Ambit Management, Inc.; Ambit Group, L.P.; Ambit Systems, Inc.; A. Jere Thompson, Jr.; and Chris Chambless (collectively, "Defendants") move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

The Illinois Commerce Commission has determined that Ambit Energy, L.P.—the parent company of a successful multi-level marketing business that re-sells energy to consumers—is *not* a pyramid scheme. Nonetheless, Plaintiff Oleg Kostovetsky ("Plaintiff")—an energy customer in Illinois—claims that Defendants operate a pyramid scheme and have violated the Racketeer Influenced Corrupt Organizations Act ("RICO") by engaging in a pattern of racketeering

activities.  Plaintiff's Complaint fails to state a claim for five reasons.  First, Plaintiff's RICO and unjust enrichment claims—both of which are based on allegations of fraud—do not satisfy Rule 9(b)'s heightened pleading standards.  Second, Plaintiff's RICO claim fails because Plaintiff pleads no facts to plausibly allege proximate cause.  Third, Plaintiff does not plead facts to support a plausible RICO claim.  Fourth, Plaintiff's unjust enrichment claim fails because the underlying tort allegations fail.  Finally, Plaintiff cannot maintain a multi-state class action for unjust enrichment, because Plaintiff does not plead the state law that applies.  For these reasons, the Court should dismiss Plaintiff's Complaint in its entirety.

## FACTUAL BACKGROUND

Plaintiff claims that Defendants are involved in a direct-selling business that markets energy products and services to consumers of various states.  *See* Compl. ¶¶ 3, 43-44.  Ambit Independent Consultants sell energy products and services to customers and they also sign up other Independent Consultants to do the same.  *See id.* ¶¶ 4, 29-30, 35.

Plaintiff switched from another energy provider to Ambit Midwest, LLC ("Ambit Midwest") in September 2013.  *See id.* ¶ 12.  He claims to have switched energy providers based on a promise by an unnamed "Ambit Consultant" that he would "be eligible for reduced energy bills if he switched."  *Id.*  Plaintiff claims that, after he switched to Ambit Midwest based on the alleged representations made by this unnamed "Ambit Consultant," his energy bills increased. *See id.*

Apparently, based solely on the comments of one anonymous Ambit Consultant (not even an Ambit employee) and Plaintiff's dissatisfaction with Ambit Midwest, Plaintiff now accuses fourteen named Defendants of violating RICO by "creating, operating and maintaining a pyramid scheme."  *Id.* ¶ 3.  Notably, however, the Illinois Commerce Commission ("ICC") previously considered whether Ambit Energy, L.P.'s business model constitutes a "pyramid

scheme" and expressly found the opposite: that Ambit's business model is *not* a pyramid scheme.[1] The ICC concluded that the "facts suggest that Ambit's marketing model emphasizes the sale of its product, *not* recruiting consultants."[2] Plaintiff also admits to purchasing a product—energy. *See, e.g.*, Compl. ¶ 12.

Plaintiff claims that the purpose of the alleged "pyramid scheme" is "to defraud thousands of individuals" by "promis[ing]—and fail[ing]—to provide affordable electricity and gas to its customers through the utilization of a deceptive marketing campaign." *Id.* The alleged RICO violations are predicated on purported acts of mail and wire fraud. *See id.* ¶ 86. Plaintiff fails to describe which "Defendants" purportedly sent the allegedly fraudulent communications, what exactly those allegedly fraudulent communications said, when the allegedly fraudulent communications were sent, and where that transmission occurred. *See id.* ¶ 68.

Plaintiff also alleges that Defendants were unjustly enriched as a result of Defendants' receipt of payments "received as the result of a fraudulent and deceptive marketing scheme." *Id.* ¶ 105. As described below, the Court should dismiss Plaintiffs' RICO and unjust enrichment claims with prejudice.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6)

---

[1] *See* ICC, Ambit Energy, L.P. Application for Certificate of Authority under Section 19-110 of the Public Utilities Act, No. 08-0220, at 9-12 *available at* http://ediillinois.org/ppa/meta/html/00/00/00/01/04/47.html (last visited May 15, 2015). On a motion to dismiss, the court may consider "in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, *and information that is properly subject to judicial notice*." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (emphasis added). Decisions from administrative agencies are documents that are properly subject to judicial notice. *See Ray v. City of Chi.*, 629 F.3d 660, 665 (7th Cir. 2011) ("[I]t is well established that district courts may take judicial notice of certain documents—*including records of administrative actions*—when deciding motions to dismiss." (emphasis added)).
[2] *See id.* at 11.

challenge, a complaint must contain sufficient factual allegations "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[L]abels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555. Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted).

Additionally, claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b)'s heightened pleading standard requires the plaintiff to specifically allege 'the who, what, when, where, and how.'" *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.* As shown below, Plaintiff fails to meet Rule 8(a)'s notice pleading standard, fails to satisfy Rule 9(b)'s heightened pleading requirements, and fails to state a claim.

## ARGUMENT AND AUTHORITIES

**A. All of Plaintiff's claims fail to satisfy Rule 9(b)'s heightened pleading standards.**

Both Plaintiff's RICO claims and his unjust enrichment claim are based on underlying allegations of fraud. *See* Compl. ¶¶ 86, 102 (RICO claims based on mail fraud and wire fraud); *id.* ¶ 104 (unjust enrichment claim based on "a fraudulent and deceptive marketing scheme"). Therefore, Rule 9(b)'s heightened pleading standards apply to both Plaintiff's RICO claims and his unjust enrichment claim. *See Kaye v. D'Amato*, 357 F. App'x 706, 710 (7th Cir. 2009) ("Allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all allegations of fraud with particularity."); *Baldwin v. Star Sci., Inc.*, --- F. Supp. 3d ---, 2015 WL 170407, at *13

(N.D. Ill. Jan. 13, 2015) (discussing a plaintiff's unjust enrichment claims and holding that, because they sound in fraud, Rule 9(b)'s particularity requirement applies).

    **1.    Plaintiff fails to allege the "who, what, when, where, and how" required by Rule 9(b).**

The heightened pleading standard requires "the plaintiff to specifically allege 'the who, what, when, where, and how.'" *Borsellino*, 477 F.3d at 507. As discussed in detail below, the Complaint fails to allege the "who" because Plaintiff engages in impermissible group pleading. Plaintiff also fails to allege when the allegedly fraudulent statements were made, where they were made, and, at times, how they were communicated. At a minimum, Plaintiff must allege what specific misrepresentation was made to him and by which Defendant, when and where such misrepresentations were made, and whether the misrepresentations were written or oral. Plaintiff fails to do any of this.

Paragraph 68 of the Complaint contains an example of Plaintiff's vague allegations: "Defendants' use of the mails and wire to perpetrate the fraud involved thousands of communications, including . . . [t]ransmission of misleading and fraudulent marketing materials to Consultants via the mail, facsimile and electronic mail . . . ." Compl. ¶ 68. These vague assertions are patently insufficient under Rule 9(b) and do not put Defendants on notice of the allegations against them because they fail to list the required "who, what, when, where, and how." *Borsellino*, 477 F.3d at 507; *Vicom*, 20 F.3d at 778. The Court should therefore dismiss Plaintiff's claims—which all rely on fraud allegations—for failure to satisfy Rule 9(b)'s heightened pleading requirements.

    **2.    Plaintiff's claims impermissibly lump all Defendants together and fail to specify each Defendant's purportedly wrongful conduct.**

Plaintiff's Complaint impermissibly engages in group pleading and fails to specify each Defendant's allegedly fraudulent conduct. Throughout the Complaint, Plaintiff refers to the

group of Defendants collectively. Reviewing the Complaint, however, it is apparent that Plaintiff has cobbled together every Ambit subsidiary—as well as two named individual Defendants and 100 "John Does"—regardless of each Defendant's connection to Plaintiff or to Illinois. Then, Plaintiff tries to disguise his impermissible pleading by vaguely alleging that "Defendants" collectively committed allegedly wrongful acts. These vague allegations do not satisfy the pleading requirements of Rule 9(b).

The Seventh Circuit has held that, "in a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Thus, courts will "reject[] complaints that have 'lumped together' multiple defendants." *Id.*; *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328-29 (7th Cir. 1994) (holding that lumping affiliated corporate defendants together "is an indulgence that a plaintiff should avoid when it comes to attributing acts of mail and wire fraud"); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569, at *10-11 (N.D. Ill. May 17, 2010) (dismissing RICO claims where the plaintiff improperly lumped together affiliated defendants).

In *Freedom Mortgage Corporation v. Burnham Mortgage, Inc.*, 720 F. Supp. 2d 978 (N.D. Ill. 2010), the court addressed whether a RICO claim predicated on mail and wire fraud met Rule 9(b)'s pleading requirements. *Id.* at 994. The court determined that, because the complaint "include[d] references only to 'the RICO Defendants' in describing the conduct of the numerous defendants," it was insufficient under Rule 9(b). This was because the complaint failed to inform the defendants of the basis of the plaintiff's claim against each of them. *Id.* at 994-95.

Likewise, here, Plaintiff's Complaint refers only to the "Ambit Pyramid Enterprise"— defined to include the "Ambit Participants"—"Ambit," or "Defendants" when describing the

allegedly fraudulent acts about which they complain. *See* Compl. ¶¶ 5, 8, 62-63, 67-69, 86, 90, 99, 105. *Nowhere* does Plaintiff identify, with particularity, the "who" required by Rule 9(b). Notably, the face of the Complaint indicates that Plaintiff does not even know "who" it is suing, because he names "John Does 1-100" as defendants. In short, Plaintiff's allegations are insufficient to put each Defendant on notice of its alleged wrongful conduct, and the Court should dismiss Plaintiff's Complaint because it impermissibly lumps all Defendants together and fails to describe their allegedly wrongful conduct with particularity.

        3.        **Plaintiff cannot rely on anonymous Internet postings to support his claims.**

Plaintiff pastes into the Complaint alleged "postings" about Ambit from the Internet. *See* Compl. ¶¶ 54-56. The Court should ignore these postings because the Internet is "often the repository of a wide range of casual, emotive, and imprecise speech," and statements from the Internet should not be viewed as fact. *See Nanoviricides, Inc. v. Seeking Alpha, Inc.*, No. 151908/2014, 2014 NY Slip Op 31681 (N.Y. Sup. Ct. June 26, 2014); *Doe v. Cahill*, 884 A.2d 451, 465–66 (Del. 2005); *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 981 (N.D. Ohio 2003). Indeed, posting something on the Internet does not make it a fact:

> Anyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation. Moreover, the Court holds no illusions that hackers can adulterate the content on any web-site from any location at any time. *For these reasons, any evidence procured off the Internet is adequate for almost nothing. . . .*

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 775 (S.D. Tex. 1999) (emphasis added). The Internet also has no indicia of reliability:

> [M]essage boards are accessible to any one of the tens of millions of people in this country (and more abroad) with Internet access, and no one exerts control over the content. Pseudonym screen names are the norm. *A reasonable reader would not view the blanket, unexplained statements at issue as 'facts' when placed on such an open and uncontrolled forum.*

*Cahill*, 884 A.2d at 465–66 (emphasis added).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS – Page 7**

Merely citing to or quoting from Internet postings about which a plaintiff has no personal knowledge is insufficient factual support under Rule 8(a)—much less Rule 9(b)'s heightened pleading standard. *See Mendoza v. Aurora Loan Servs., LLC*, No. 2:10–CV–02197–GMN–GWF, 2011 WL 2413995, at *1 (D. Nev. June 13, 2011) (dismissing a complaint "comprised of various articles, affidavits and other unidentifiable documents (which appear to be copied from the Internet and/or other unrelated litigation)"); *see also Cahill,* 884 A.2d at 465–66; SPX Corp., 253 F. Supp. 2d at 981; St. Clair, 76 F. Supp. 2d at 775.

Further, Rule 11 requires attorneys to personally investigate the law and facts underlying his or her case. *See Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280 (3d Cir. 1994) (finding attorneys violated Rule 11 by failing to personally investigate the law and facts underlying a securities-fraud complaint and instead only relying on a Wall Street Journal article, another complaint, and another attorney). Simply copying and pasting anonymous postings from an Internet message board does not constitute a personal inquiry and fails under Rules 8(a) and 9(b).

### B. Plaintiff fails to plead that the alleged RICO violation proximately caused his injury.

Plaintiff does not plead a RICO claim because he fails to plead facts to support an inference that Defendants proximately caused his purported injury. "[T]o state a claim under civil RICO, the plaintiff is required to show that *a RICO predicate offense* not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (emphasis added) (citation and internal quotation marks omitted). This "requires some direct relation between the injury asserted and the injurious conduct alleged." *Id.*

Plaintiff fails this "direct relation" test. The RICO predicate acts on which Plaintiff relies are mail and wire fraud. *See* Compl. ¶¶ 67-69, 102. With respect to the cause of his alleged injury, however, Plaintiff claims that an unnamed "Consultant" promised Plaintiff "lower energy bills and consistent savings" if he switched to Ambit. Compl. ¶ 12. Plaintiff contends that, after

he switched to Ambit, his energy bills rose, and Plaintiff purportedly "suffered out-of-pocket losses as a result of Defendants' wrongdoing alleged herein." *Id.*

First, Plaintiff cannot make claims against Defendants based on statements made by an Independent Consultant who was not acting as Defendants' agent.[3] Second, and most importantly, nowhere in the Complaint does Plaintiff allege facts showing that RICO predicate offenses of mail or wire fraud caused Plaintiff's injury. Rather, the Complaint relies solely on purported communications from an unnamed "Consultant." No causal nexus exists between Defendants and Plaintiff. Thus, because Plaintiff does not plead that a RICO predicate offense proximately caused his purported injury, the Court should dismiss Plaintiff's RICO claim.

**C. Plaintiff fails to adequately plead facts to support the elements of a RICO claim under 18 U.S.C. § 1962(c).**

Congress enacted RICO to combat "long-term criminal conduct." *Vicom*, 20 F.3d at 780. "[T]he statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). RICO is not to be used as a garden-variety fraud or consumer-protection statute, but, as shown below, that is precisely what Plaintiff seeks to do.

Plaintiff pleads that "Defendants" violated 18 U.S.C. § 1962(c). Compl. ¶¶ 82-103. To establish a violation of § 1962(c), the plaintiff must show: "(1) conduct (2) of an enterprise (3)

---

[3] Plaintiff implies, but does not allege, that this unnamed Independent Consultant acted on Defendants' behalf. *See* Compl. ¶ 12. Defendants are not responsible for allegedly tortious conduct by an independent contractor because Plaintiff fails to plead any facts establishing that this independent contractor had actual or apparent authority to act on behalf of any Defendants. *See BH Seven, LLC v. Ambit Energy, L.P.*, No. 1:11-cv-02483, Opinion and Order (E.D.N.Y. Aug. 14, 2012) (dismissing a breach-of-contract claim based on statements made by an Independent Consultant because, "even at the pleading stage, [a plaintiff] must do more than state the legal conclusion that [a subsidiary] was the defendant's agent[;] it must plead facts that support a finding that agency existed"). The fact that the Complaint relies on purported statements made by an Independent Consultant renders Plaintiff's failure to specify who made the alleged misstatements or omissions even more problematic.

through a pattern (4) of racketeering activity." *Jennings*, 495 F.3d at 472. Plaintiff fails to plead facts sufficient to support a finding with respect to the second, third, and fourth elements.

### 1. The Complaint contains no facts to plead an "enterprise."

Plaintiff fails to plead facts to support an inference that Defendants formed a RICO enterprise. The term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff alleges that the "enterprise" is an "association-in-fact" enterprise." Compl. ¶ 84. To establish such an enterprise, the U.S. Supreme Court requires that the plaintiff plead three features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to continue to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). This definition is "not limitless." *United Food & Comm. Workers Unions & Emprs. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). The "person" must have "conducted or participated in the conduct of 'the enterprise's affairs,' not just [its] own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Drobny v. JP Morgan Chase Bank, N.A.*, 929 F. Supp. 2d 839, 850 (N.D. Ill. 2013). If each member of the purported enterprise merely goes about its separate business, and the purported enterprise was not created or operated for purposes of improperly committing criminal acts, there is no RICO enterprise, as defined by the statute. *See, e.g.*, *United Food & Comm. Workers Unions*, 719 F.3d at 855; *Rowe v. Bankers Life & Cas. Co.*, NO. 09-CV-00491, 2010 WL 369928, at *5-6 (N.D. Ill. Sept. 13, 2010).

Here, Plaintiff pleads nothing more than the bare statutory element of enterprise. *See* Compl. ¶¶ 7, 83-85. Plaintiff defines the "enterprise" as

> (i) Defendant Ambit Energy Holdings, LLC, its subsidiaries and other employees and agents of Ambit, including, on information and belief, Jere Thompson, Jr., Co-Founder and Chief Executive Officer and Chris Chambless, Co-Founder and Chief Marketing Officer ("Ambit Participants") and (ii) individual defendant

> consultants including John Does 1-11 who are paid by Ambit to recruit new customers to Ambit . . . .

*Id.* ¶ 7. Plaintiff alleges, in a conclusory manner, that the enterprise "intended to cause Plaintiff and others to pay for excessive overcharges for energy on their monthly bills." *Id.* ¶ 90.

In addition to pleading the mere elements, the Complaint is deficient on two other grounds: (1) Plaintiff fails to identify each Defendant's role in the alleged enterprise; and (2) Plaintiff fails to plead that there is a group that has come together solely for the purpose of conducting the alleged criminal activity. These deficiencies are fatal to his claim.

First, Plaintiff does not identify each Defendant's role in the purported enterprise. For example, in *Drobny*, the court held that the plaintiffs failed to adequately plead the enterprise element of a RICO claim because "[f]or each Defendant, the complaint must plead that the defendant had some part in directing or conducting the alleged 'enterprise' such that it participated in the operation or management of the enterprise itself." 929 F. Supp. 2d at 850. The plaintiffs' complaint "allege[d] no details about each Defendant's role in the enterprise. . . ." *Id.* Therefore, the court held that the RICO claim could not survive a motion to dismiss. *See id.* Likewise, here, the Complaint never specifies each Defendant's role in the alleged enterprise.

Second, Plaintiff fails to plead any *facts* that Defendants associated together *for the purpose of committing criminal acts*—here, as alleged by Plaintiff, mail and wire fraud. Rather, the *facts* as pleaded show that each Defendant is merely conducting its own separate business of selling energy products or services to consumers. *See, e.g.*, Compl. ¶¶ 28-39 (describing the consultants' role as salespersons, where they earn commissions from sales); *id.* ¶¶42-45 (describing the Ambit entities' roles as energy re-sellers). There are *no* factual allegations to support a finding that any of Defendants either created or currently operate the purported "enterprise" *for the purpose of* committing mail or wire fraud. Accordingly, Plaintiff fails to plead the "enterprise" element of his RICO claim.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS – Page 11**

### 2. The Complaint fails to state any facts that would show a "pattern."

The Complaint further fails to plead facts to show a "pattern" of racketeering activity. The statute defines a pattern of racketeering activity as consisting of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). As discussed in greater detail below, predicate acts include mail and wire fraud. *See id.* § 1961(1)(B).

The Seventh Circuit has pointed out that, "[g]iven RICO's generous civil awards," the broad definition of what constitutes a pattern "has lead (not surprisingly) to widespread attempts to turn routine commercial disputes into civil RICO actions." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992). Thus, "a civil RICO plaintiff may no longer get by merely alleging two predicate acts, but must satisfy the so-called 'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)." *Id.* To establish continuity, a plaintiff may show either that there are a series of related predicate acts extending over a substantial period of time (close-ended continuity) or if the predicate acts "by [their] nature, project[] into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

In *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629 (7th Cir. 2001), the plaintiff pleaded that a retail furniture store's owners misrepresented the quality of the furniture she bought. She alleged that the furniture store's owners, together with the store, constituted an enterprise. The plaintiff claimed the enterprise's conduct violated RICO because she and one other customer received a fraudulent communication via the mail or wire. *Id.* at 631. The court concluded that this was insufficient to show a "pattern." *Id.* at 632-33. In so holding, the court noted that if the customer's RICO claim were permissible, all stores in which a salesman made a misrepresentation to one or more customers would violate RICO:

> If [the plaintiff] has succeeded in stating a RICO claim, there probably isn't a retail store in the United States that can't be sued successfully under RICO, and

> thus branded as a 'racketeer' and exposed to liability for treble damages, by a disgruntled customer. All the customer has to do, if [the plaintiff's] RICO claim can survive a 12(b)(6) motion, is allege a misrepresentation by a salesman that induced him to buy a product that he otherwise wouldn't have bought, the use of the mails or of wire communications in connection with the sale or the ensuing dispute, and that another customer was similarly victimized.

*Id.* at 632. These allegations were simply insufficient to state a claim.

Like the customer in *Pizzo*, Plaintiff does not plead a "pattern" of racketeering activity. Even if Plaintiff himself received a fraudulent representation via mail or wire—which, as discussed above, he has not alleged—that would only be *one* "act." No concrete allegations exist that plausibly plead continuity or relationship. Rather, Plaintiff only alleges *events*. Plaintiff's claim that Defendants made "thousands" of communications is conclusory and contains *no* supporting factual allegations; therefore, such allegations must be disregarded. *See Luis v. Smith Ptnrs. & Assocs., Ltd.*, No. 12 C 2922, 2012 WL 5077726, at *4 (N.D. Ill. Oct. 18, 2012) (Feinerman, J.) (noting that, [a]s the Seventh Circuit has cautioned, '[a] threat of continuity cannot be found from bald assertions such as '[defendant] continues his racketeering activities.'" (quoting *Vicom*, 20 F.3d at 783)); *Patel v. Mahajan*, No. 11 C 4545, 2012 WL 3234397, at *4 (N.D. Ill. Aug. 6, 2012) (Feinerman, J.) (rejecting bare allegations that a defendant's conduct was continuous and requiring "details to support the allegation"); *see also Iqbal*, 556 U.S. at 678 (holding that factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Because Plaintiff offers *no* concrete examples of any communications sent via mail or wire, and *no* examples of a pattern, the Court should hold that Plaintiff failed to plead a pattern of racketeering activity.

### 3. The Complaint contains no facts to allege a "racketeering activity."

Plaintiff alleges, in a conclusory fashion, that "Defendants" committed wire and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343. *See* Compl. ¶¶ 67-69. As described in detail above, Plaintiff's allegations of fraud are insufficient to survive a motion to dismiss, because

Plaintiff fails to meet Rule 9(b)'s heightened pleading requirements. To establish mail or wire fraud, Plaintiff must specifically plead facts to show "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails or wire communication in furtherance of the fraudulent scheme." *United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993). To satisfy Rule 9(b), the plaintiff must "allege when the false documents were transmitted, who mailed or wired them, or why [the plaintiff] believe[s] that person had an intent to defraud." *Drobny*, 929 F. Supp. 2d at 849. A complaint that "includes nothing beyond 'loose references' to serving misleading documents by mail [and] does not identify which Defendants committed which acts of fraud or why they had an intent to defraud," fails to state a claim. *Id.*

As discussed above, Plaintiff fails to satisfy Rule 9(b) as applied to the mail and wire fraud allegations. Plaintiff does not allege *when* Defendants allegedly transmitted the false documents, *who* transmitted them, and *what* the allegedly false statements were. Instead, Plaintiff merely pleads the elements of the predicate act: "Defendants[] use[d] . . . the mails and wires to perpetrate the fraud involv[ing] thousands of communications," and "Defendants' corporate headquarters have communicated by United States mail, telephone, and facsimile with various local and regional Consultants in furtherance of Defendants' scheme." Compl. ¶¶ 68-69. Thus, Plaintiff's pleading of the predicate acts of mail or wire fraud fail to state a claim under Rule 9(b).

> **D. Plaintiff fails to adequately plead facts to support the elements of a RICO conspiracy claim under 18 U.S.C. § 1962(d).**

The Complaint's allegations are insufficient to plausibly plead a violation of 18 U.S.C. § 1962(d)—the RICO conspiracy provision. To plead a violation of § 1962(d), the plaintiff must show: "(1) an agreement to conduct or participate in the affairs (2) of an enterprise (3) through a pattern of racketeering activity." *United States v. Olson*, 450 F.3d 655, 664 (7th Cir. 2006).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS – Page 14**

Because the Complaint contains no facts to support an inference of any of these elements, the Court should dismiss Plaintiff's RICO conspiracy claim.

As discussed above in Sections C.1 through C.3, the Complaint contains no facts to plausibly plead an enterprise or a pattern of racketeering activity. Thus, the conspiracy claim fails. Additionally, Plaintiff pleads no facts to support an inference of the first element: "*an agreement* to conduct or participate in" the enterprise. *Olson*, 450 F.3d at 664 (emphasis added). The only allegations regarding an "agreement" are the following:

> The nature of the above-described Defendants' co-conspirators' acts and material misrepresentations in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

Compl. ¶ 100.

Although an agreement may be implied, a complaint still needs to plead *some facts* from which a court may plausibly find that there has been an agreement to participate in a RICO enterprise. *See, e.g.*, *Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 784 (7th Cir. 1999) (affirming dismissal of a RICO conspiracy claim because "nothing in . . . any other portion of the complaint pleads any facts indicating an act of agreement among the alleged conspirators or what roles the various defendants would play in the conspiracy"); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (affirming the dismissal of a RICO conspiracy claim because the complaint contained "no details as to the roles played by the individual[s] . . . in the [enterprise], not even their corporate titles; nor does it allege any facts indicating an agreement by the individual[s] . . . as to which roles they would play in the enterprise").

Similarly, here, Plaintiff fails to plead any concrete *facts* from which the Court may plausibly infer that Defendants agreed to participate in a RICO enterprise. Indeed, like in both *Lachmund* and *Goren*, Plaintiff fails to detail what role each Defendant allegedly played in the

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS – Page 15**

alleged enterprise. *See Lachmund*, 191 F.3d at 784; *Goren*, 156 F.3d at 726. Therefore, the Court should dismiss Plaintiff's claim under § 1962(d).

> **E. The Court should dismiss Plaintiff's unjust enrichment claim.**
>
> > **1. Under Illinois law, because Plaintiff's underlying tort claim fails, his unjust enrichment claim must be dismissed.**

As discussed above in Section A, Plaintiff fails to satisfy Rule 9(b)'s heightened pleading requirement with respect to his claims that Defendants engaged in a "fraudulent and deceptive marketing scheme." Because the tort claim on which Plaintiff's unjust enrichment claim rests fails, the Court should dismiss his unjust enrichment claim.

Under Illinois law, "unjust enrichment may be predicated on either quasi-contract or tort." *Dolmage v. Combined Ins. Co. of Am.*, No. 14-cv-03809, 2015 WL 292947, at *8 (N.D. Ill. Jan. 21, 2015). Perhaps recognizing that the existence of an express contract governing the parties' relationship would be fatal to any unjust enrichment claim based on quasi-contract, Plaintiff bases his unjust enrichment claim on Defendants' purported "fraudulent and deceptive marketing scheme." Compl. ¶¶ 104-05.

Courts have repeatedly held that, if an unjust enrichment claim is based on the same allegedly improper conduct as another claim, and the related claim fails, so does the unjust enrichment claim. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011); *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007); *Dolmage*, 2015 WL 292947, at *8; *Machowicz v. Kaspersky Lab, Inc.*, No. 14 C 1394, at *5 (N.D. Ill. Sept. 19, 2014). For example, in *Association Benefit Services*, the Seventh Circuit affirmed the district court's decision dismissing an unjust enrichment claim that was based on allegedly fraudulent conduct because the underlying fraud claim failed. 493 F.3d at 854. The court specifically held that, under Illinois law, "where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the

fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Id.* at 855 (citation and internal quotation marks omitted).

Here, because Plaintiff fails to satisfy Rule 9(b)'s heightened pleading requirements regarding fraud, the Court should dismiss his fraud-based RICO claims. The dismissal of these underlying claims necessitates the dismissal of Plaintiff's unjust enrichment claim that is premised on the same underlying conduct. Accordingly, the court should dismiss Plaintiff's unjust enrichment claim.

### 2. Plaintiff cannot maintain a multi-state class action for unjust enrichment because he fails to plead the applicable state law.

Plaintiff seeks to bring a class action on behalf of a class of plaintiffs from all Ambit customers from 2006 to the present—which encompasses individuals from at least 15 states. *See* Compl. ¶ 44, 70. Plaintiff fails to plead which state's law applies to his unjust enrichment claim. The Court should dismiss Plaintiff's claims for failure to specify which state law applies to the proposed multi-state class, which is a pleading defect requiring dismissal. *See, e.g.*, *In re Ductile Iron Pipe Fittings Indirect Purch. Antitrust Litig.*, No. 12–169, 2013 WL 5503308, at *8 (D.N.J. Oct. 2, 2013) (dismissing the unjust enrichment claim for failing to plead the applicable state law) (collecting cases); *see also In re TFT-LC (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1124 (N.D. Cal. Aug. 25, 2008); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009).

In *In re Aftermarket Filters Antitrust Litigation*—a case from this district—the court dismissed the plaintiff's unjust enrichment claim on behalf of a nationwide class because the plaintiff "fail[ed] to plead the required factual basis of an unjust enrichment claim on a state by state basis." 2009 WL 3754041, at *11. Because of the "differences in the states' legal theories of unjust enrichment, it is impossible for this claim to be brought as a nationwide class." *Id.*

Likewise, here, Plaintiff fails to plead which state's law applies to his unjust enrichment claim. Given the vast differences in the various states' laws[4] and Plaintiff's failure to put Defendants on notice as to which state's laws apply to his unjust enrichment claim, the Court should dismiss it.

### F. Plaintiffs should not be permitted to re-plead.

Allowing leave to replead is not required if repleading would be futile. *See Hadley v. Dobucki*, 59 F.3d 173, 1995 WL 364225, at *2 (7th Cir. 1995) ("[A] district court does not abuse its discretion in denying leave to amend if repleading would be futile."). In addition to being pleaded inadequately, each of Plaintiff's claims is legally defective, rendering amendment futile.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: June 3, 2015.

---

[4] For example, unlike Illinois law, California law does not recognize unjust enrichment as an independent cause of action. *See, e.g.*, *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015). Similarly, in New Jersey, "unjust enrichment cannot provide an independent tort claim." *Debjo Sales, LLC v. Houghton Mifflin Harcourt Pub. Co.*, No. 14-4657, at *8 (D.N.J. Apr. 29, 2015).

        Respectfully submitted,

        By: */s/ Michael D. Sher*
        Michael D. Sher
        NEAL, GERBER & EISENBERG, LLP
        2 N La Salle St Ste 1700
        Chicago, IL 60602-4000
        Telephone: (312) 269-8000
        Facsimile: (312) 429-3553
        msher@ngelaw.com

        Stephen C. Rasch
        *Admitted pro hac vice*
        Michael W. Stockham
        *Admitted pro hac vice*
        THOMPSON & KNIGHT LLP
        1722 Routh Street, Suite 1500
        Dallas, Texas 75201
        Telephone: 214.969.1700
        Facsimile: 214.969.1751
        Stephen.Rasch@tklaw.com
        Michael.Stockham@tklaw.com

        ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

     I, Michael D. Sher, hereby certify that on June 3, 2015, I electronically filed the foregoing document, which will send notification of such filing to counsel of record for all parties.

        */s/ Michael D. Sher*