| | |
|---|---|
| OLEG KOSTOVETSKY, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMBIT ENERGY HOLDINGS, LLC, AMBIT MIDWEST, LLC, AMBIT TEXAS, LLC, AMBIT NORTHEAST, LLC, AMBIT NEW YORK, LLC, AMBIT MARKETING, LLC, AMBIT ILLINOIS, LLC, AMBIT CALIFORNIA, LLC, AMBIT HOLDINGS, LLC, AMBIT NEW JERSEY, LLC, AMBIT MANAGEMENT, INC., AMBIT GROUP, L.P., AMBIT SYSTEMS, INC., JERE THOMPSON, JR., CHRIS CHAMBLESS, JOHN DOES 1-100, <br><br> Defendants. | 15 C 2553 <br><br> Judge Feinerman |

## M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>

Oleg Kostovetsky alleges in this putative class action that Jere Thompson, Jr., Chris Chambless, Ambit Energy Holdings, LLC, several other Ambit entities, and 100 unnamed Ambit consultants perpetrated a scheme to defraud thousands of individuals in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and state law. Doc. 1. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), Doc. 17, and Kostovetsky has moved to strike four items introduced by Defendants in their reply brief, Doc. 44. Kostovetsky's motion to strike is granted and Defendants' motion to dismiss is denied.

**Background**

On a Rule 12(b)(6) motion, the court must accept as true the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Kostovetsky's favor, but not its legal

1

conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Kostovetsky's brief opposing dismissal, so long as those additional facts are "consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Kostovetsky as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

Ambit Energy Holdings is a third-party electricity and natural gas provider operating in deregulated energy markets across the United States. Doc. 1 at ¶ 13. Thompson is the co-founder, Chief Executive Officer, Secretary, and Treasurer, and Chambless is the co-founder and Chief Marketing Officer, of Ambit Energy Holdings, Ambit Midwest, Ambit Northeast, Ambit Texas, Ambit New York, and Ambit Marketing; each company has the same address in Dallas, Texas. *Id*. at ¶¶ 13-18, 26-27. Ambit Marketing develops standard marketing materials for Ambit's energy supply service. *Id*. at ¶ 18. Ambit Midwest contracts with customers in the Midwest; Thompson is its sole employee. *Id*. at ¶ 14. Ambit Northeast and Ambit New York are wholly-owned subsidiaries of Ambit Holdings and Ambit Energy Holdings, respectfully. *Id*. at ¶¶ 16-17. Ambit Illinois, Ambit California, Ambit New Jersey, Ambit Management, Ambit Systems, and Ambit Group are owned and operated by Ambit Energy Holdings; each has the same Dallas address as the other Ambit companies. *Id*. at ¶¶ 19-20, 22-25. John Does 1-100 are Ambit consultants who earn free energy and other benefits by signing up new customers for Ambit. *Id*. at ¶¶ 28-29. Ambit (a term that encompasses all of the Ambit entities) provides training and marketing materials to its consultants. *Id*. at ¶ 30.

In September 2013, an Ambit consultant approached Kostovetsky about switching his energy provider to Ambit. *Id*. at ¶ 12. The pitch included promises of lower energy bills and consistent savings if Kostovetsky became an Ambit consultant. *Ibid*. Kostovetsky declined to become a consultant, but was assured that he would remain eligible for reduced energy bills if he switched to Ambit. *Ibid*. Kostovetsky did so, and his energy bills proceeded to double relative to what he had paid with his previous energy supplier. *Ibid*.

Kostovetsky alleges that Defendants, through the use of deceptive marketing tactics, "defraud thousands of individuals by … promis[ing]—and fail[ing]—to provide affordable electricity and gas to [Ambit's] customers." *Id*. at ¶ 3. Defendants neglect to "inform consumers who switch to Ambit that they will see their energy rates skyrocket" given that "Ambit's variable energy rates can fluctuate rapidly and have no ceiling." *Id*. at ¶ 47. These facts about Ambit's rates are "withheld from consumers[,] who are pitched by aggressive marketing materials" that "preach consistency and savings while failing to warn customers of the factors affecting Ambit's variable energy rates." *Ibid*.

Ambit managed the fraudulent scheme by sending and receiving "thousands of mail and interstate wire communications" pertaining to negotiations, payment, monthly billing, and marketing. *Id*. at ¶¶ 67-68. The Better Business Bureau has addressed 465 complaints lodged against Ambit in the last three years. *Id*. at ¶ 53. Complaints about Ambit posted on consumer websites assert that the complainants were promised savings only to later find that their energy rates increased dramatically. *Id*. at ¶¶ 55-56.

Kostovetsky has moved to strike four items introduced for the first time in Defendants' reply brief: (1) screenshots from Ambit's website (Doc. 43 at 10, 15); (2) a letter from Ambit to Kostovetsky detailing his savings (Doc. 43-1); (3) the fact that Ambit Illinois is the entity

3

authorized to do business in Illinois and the entity from which Kostovetsky purchased energy (Doc. 43 at 21); and (4) the Terms of Service posted on Ambit's website (*id*. at 14-16). Doc. 44. Settled law holds that new facts and arguments may not be presented for the first time in a reply brief. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue."); *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well-settled that new arguments cannot be made for the first time in reply. This goes for new facts too.") (citation omitted); *Smith v. Altman*, 2015 WL 5675376, at *2 (N.D. Ill. Sept. 21, 2015) ("New arguments, facts, and exhibits offered in a party's reply do not allow the other side a fair opportunity to respond and therefore the Court must disregard them."). Accordingly, Kostovetsky's motion to strike is granted, and the court does not consider those materials in deciding the motion to dismiss. That said, at a hearing on the present motions, Defendants acknowledged that their arguments for dismissal do not depend on those materials.

## Discussion

The complaint alleges that Defendants engaged in and conspired to engage in a pattern of racketeering activity in association with the "Ambit Pyramid Enterprise"—consisting of Defendants, their employees and agents, and the Ambit consultants—in violation of 18 U.S.C. §§ 1962(c) and (d). Doc. 1 at ¶¶ 82-103. The complaint further alleges that Defendants unjustly enriched themselves to the detriment of Kostovetsky and the putative class in violation of the common law of several States. *Id*. at ¶¶ 104-06. Defendants move to dismiss both sets of claims.

**I.     RICO Claims**

   **A.     Section 1962(c) Claim**

Section 1962(c) prohibits any individual or entity "employed by or associated with" an "enterprise" engaged in interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a § 1962(c) claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011); *see also Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (listing the third element as two separate elements—"through a pattern" and "of racketeering activity").

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Seventh Circuit has "often incanted that a plaintiff ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2007) (internal quotation marks omitted). "A principal purpose of requiring that fraud be pleaded with particularity is, by establishing this rather slight obstacle to loose charges of fraud, to protect individuals and businesses from privileged libel (privileged because it is contained in a pleading)." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003). Accordingly, Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013) (internal quotation marks omitted).

The Seventh Circuit has not expressly resolved whether Rule 9(b)'s heightened pleading standard applies to each element of a fraud-based RICO claim or only to the fraud allegations.

5

*See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015) (holding that the RICO claims survived dismissal "[w]hether or not detailed allegations of each element (other than the alleged fraud) are required at the pleading stage"); *Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 844-45 (N.D. Ill. 2013) (noting that the "Seventh Circuit has not expressly resolved … whether Rule 9(b) must be satisfied with respect to every element of a fraud-based RICO claim, or whether the less rigorous Rule 8 pleading standard applies to non-fraud elements of the claim"). As in *Drobny*, because the Seventh Circuit has applied the ordinary Rule 8(a) pleading requirements to the enterprise element of a fraud-based RICO claim in at least one case, *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644-46 (7th Cir. 1995), this court will apply Rule 8(a) to the non-fraud elements of Kostovetsky's RICO claim and Rule 9(b) only to the allegations of mail and wire fraud.

According to the complaint, Defendants have taken advantage of deregulation in the residential gas and electricity market by luring customers into switching energy suppliers based on false promises of "low, competitive rates" and "consistent savings." Doc. 1 at ¶ 4. The Ambit Pyramid Enterprise expands its client base by offering free energy and other perks to certain customers, called "consultants," who in turn sign up new customers. *Ibid*. Ambit has over 250,000 consultants and provides them with direct support, guidance, and training. *Id*. at ¶ 33. The consultants generate significant revenue for Ambit, and some have thousands of customers in their "downline." *Id*. at ¶ 38. When approaching potential customers, the consultants promise that they will save money if they switch to Ambit. *Id*. at ¶ 47. In fact, new customers will see their energy rates skyrocket because Ambit does not offer energy at a fixed monthly rate. *Ibid*. It is not until customers receive their bills that they realize they have been deceived. *Id*. at ¶¶ 8, 48. Defendants make extensive use of the mails and wires to perpetrate

this fraud; they distribute fraudulent marketing materials to consultants, exchange negotiation communications with potential customers, send monthly bills that charge excessive amounts, and receive payments for the sale of energy to customers. *Id*. at ¶ 68.

Defendants argue that Kostovetsky has failed to allege the "enterprise" element of his RICO claim. Doc. 21 at 10-11. A RICO enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Kostovetsky attempts to allege an association-in-fact enterprise, identifying each defendant as a RICO "person" and defining the "Ambit Pyramid Enterprise" as encompassing Thompson, Chambless, the Ambit entities and their employees and agents, and the Ambit consultants. Doc. 1 at ¶ 84; Doc. 34 at 16.

"An association-in-fact does not require any structural features beyond 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purposes.'" *Bible*, 799 F.3d at 655 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). "Despite the expansive nature of this definition, it is not limitless." *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). For one, the alleged enterprise must be distinct from the § 1962(c) "person"—that is, the defendant. *See Bible*, 799 F.3d at 655; *United Food & Commercial Workers*, 719 F.3d at 853. In addition, "that person must have conducted or participated in the conduct of the *enterprise's* affairs, not just [its] own affairs." *United Food & Commercial Workers*, 719 F.3d at 854 (alteration in original) (internal quotation marks omitted). The Seventh Circuit "ha[s] distinguished between two situations: a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest," which is not a RICO enterprise, "versus a truly joint enterprise where

7

each individual entity acts in concert with the others to pursue a common interest," which can be a RICO enterprise. *Bible*, 799 F.3d at 655-56.

Defendants contend that the complaint identifies neither the enterprise's purpose nor the defendants' respective roles therein. Doc. 21 at 10-11. They are wrong on both counts. The complaint clearly identifies the Ambit Pyramid Enterprise's alleged purpose—to defraud consumers by promising them consistent savings if they switch to Ambit and then, contrary to that promise, charging them exorbitant rates. Doc. 1 at ¶¶ 3, 5-8, 46-52, 62-69, 88-90. Moreover, Kostovetsky describes each defendant's role in the scheme. The regional Ambit entities—Ambit Midwest, Ambit Texas, Ambit Northeast, Ambit Illinois, Ambit California, Ambit New York, and Ambit New Jersey—are wholly-owned subsidiaries of the Ambit corporate entities—Ambit Energy Holdings, Ambit Holdings, and Ambit Group. *Id*. at ¶¶ 13-17, 19-24; Doc. 34 at 20. Through those regional companies, the Ambit corporate entities sell and procure energy and oversee the billing and collection of money from customers. Doc. 34 at 20. Ambit Marketing develops deceptive marketing materials to advertise Ambit's energy supply service and, in conjunction with Ambit Systems, provides direct support, guidance, and training to Ambit consultants. *Ibid*. The consultants serve as the enterprise's ground troops; they sign up new customers using the materials provided to them and receive energy benefits in return. Doc. 1 at ¶ 4; Doc. 34 at 20. Thompson and Chambless, as co-founders and directors of many of these Ambit entities, run the enterprise. Collectively, the companies and people involved with them are referred to as the "Ambit family" and a "team." Doc. 1 at ¶ 39; Doc. 34 at 20.

The interlocking nature of the Ambit entities—most are owned by Ambit Energy Holdings, most have the same officers, and all are located at the same Dallas address—supports the reasonable inference that they are engaged in more than a "run-of-the-mill commercial

relationship where each entity acts in its individual capacity to pursue its individual self-interest," but rather are "a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." *Bible*, 799 F.3d at 655-56. In *Bible*, the Seventh Circuit held that the plaintiff adequately pleaded an enterprise where the defendant and two other entities were alleged to have displayed "an unusual degree of economic interdependence" and "d[id] not operate as completely separate entities." *Id*. at 656. These allegations distinguished *Bible* from *United Food & Commercial Workers*, where the plaintiffs failed to allege "that officials from either company involved themselves in the affairs of the other." *United Food & Commercial Workers*, 719 F.3d at 854. Here, the Ambit entities' respective officers are not just involved in the affairs of the other Ambit entities—they are, in many instances, the same two people, Thompson and Chambless. And, as described above, the entities themselves are highly intertwined. Accordingly, Kostovetsky has pleaded facts sufficient to infer the existence of a RICO enterprise. *See Bible*, 799 F.3d at 657 (holding that plaintiff's allegations were adequate because they indicated "a common purpose, relationships among the three entities associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purposes"); *United States v. Hosseini*, 679 F.3d 544, 557-58 (7th Cir. 2012) (rejecting criminal defendants' contention that there was insufficient evidence to establish a RICO enterprise given the "interlocking relationship" of the defendants' automobile dealerships and that the defendants' conduct "was neither independent nor lacking in coordination"); *Nesbitt v. Regas*, 2015 WL 1331291, at *7 (N.D. Ill. Mar. 20, 2015) (concluding that the alleged enterprise "had a common purpose of enriching defendants" and that the relationship element was satisfied, in part, because two individual defendants "were longtime business partners and controlled multiple business entities together").

Defendants next argue that the complaint's allegations of "racketeering activity" fail to satisfy Rule 9(b). Doc. 21 at 13-14. To plead this element, a complaint must allege the commission of at least two predicate acts of racketeering over a ten-year period. *See DeGuelle*, 664 F.3d at 199 (citing 18 U.S.C. § 1961(5)). Mail and wire fraud are predicate acts under RICO. *See* 18 U.S.C. § 1961(1)(B). Rule 9(b) requires a plaintiff to "describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Bible*, 799 F.3d at 658; *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) ("The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (internal quotation marks omitted); *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001) ("[B]ecause a RICO plaintiff must allege two predicate acts of fraud, she must satisfy the requirements of Rule 9(b) twice.").

The complaint alleges that in September 2013, an Ambit consultant approached Kostovetsky personally and assured him he would be eligible for reduced rates if he switched to Ambit, that Kostovetsky did switch, and that his energy bills then doubled. Doc. 1 at ¶ 12. The complaint further alleges that during the course of the parties' relationship, Ambit sent Kostovetsky via the mails and wires monthly bills that told him what he owed and that charged him an excessive sum for energy. *Id*. at ¶ 68; Doc. 34 at 24. The identities of the parties (Ambit and Kostovetsky), the time and place of the communications (once a month starting from September 2013, presumably at Kostovetsky's home in Skokie, Illinois), and the content of the

communications are all adequately pleaded under Rule 9(b), as is the nature of the misrepresentation. *See Bible*, 799 F.3d at 658-59 (holding that two communications omitting or concealing material information were "sufficient to constitute mail or wire fraud" for purposes of establishing that the defendant had engaged in racketeering activity). Even though the Ambit bills themselves are not deceptive on their face, each bill qualifies as a predicate act because they were sent in furtherance of the allegedly deceptive overall scheme. *See United States v. Powell*, 576 F.3d 482, 493 (7th Cir. 2009) ("The mailing or use of the wires need not itself contain false or fraudulent material; a routine or innocent mailing or use of the wire can supply this element of the offense, as long as the use of the mail or wire is part of the execution of the scheme.") (internal quotation marks omitted); *Ruderman v. Freed*, 2015 WL 5307583, at *3 (N.D. Ill. Sept. 10, 2015) (holding that the plaintiff stated a mail fraud claim with the requisite specificity "[r]egardless of whether either letter contained misrepresentations," so long as they "were sent in furtherance of the alleged scheme").

It is true that the complaint does not identify what particular Ambit entity sent the bills to Kostovetsky, but that does not matter under the circumstances of this case. *See Aliano v. WhistlePig, LLC*, 2015 WL 2399354, at *6 (N.D. Ill. May 18, 2015) ("Under these circumstances, where the misrepresentations were made on Defendants' own website and product, it is not necessary for Plaintiffs to identify a specific person who allegedly made the statements."). As the Seventh Circuit has cautioned, "courts and litigants often erroneously take an overly rigid view of the formulation" that a complaint must specify the "who" of the fraud, forgetting that "the requisite information—what gets included in that first paragraph—may vary on the facts of a given case." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 442. Whoever established the Ambit businesses, probably Thompson and Chambless, created

11

a dizzying array of entities, all located at the same address and engaged in the same business; they just as easily could have been organized differently. It is understandable that Kostovetsky does not yet know which particular entity did precisely what, and the distinctions among at least some of the various Ambit entities may reflect more form than substance. Indeed, even Defendants appear confused as to which entity provided energy to and billed Kostovetsky; their initial brief says that he "switched from another energy provider to Ambit Midwest," Doc. 21 at 2, while their reply brief suggests that he contracted with Ambit Illinois, Doc. 43 at 21. Given this, Defendants cannot justifiably fault Kostovetsky for often referring to the Ambit entities collectively and for not precisely alleging which entity engaged in which conduct. *See Cincinnati Life Ins.*, 722 F.3d at 948 ("[W]hile we require a plaintiff claiming fraud to fill in a fairly specific picture of the allegations in her complaint, we remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail.") (internal quotation marks omitted). The Seventh Circuit has held that "absent a compelling reason, a plaintiff is not normally entitled to treat multiple corporate defendants as one entity," *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994), but such compelling reasons are present here.

Defendants next contend that the complaint does not sufficiently plead a "pattern" of racketeering activity. Doc. 21 at 12-13. To plead a pattern, the alleged acts must satisfy "the 'continuity plus relationship' test, which requires that the predicate acts be related to one another (the relationship prong) and that they pose a threat of continued criminal activity (the continuity prong)." *Bible*, 799 F.3d at 659; *see also DeGuelle*, 664 F.3d at 199 ("[T]o show a pattern of racketeering activity, a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity.") (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "A relationship is established if the criminal acts have the same or similar purposes,

results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *DeGuelle*, 664 F.3d at 199 (internal quotation marks omitted). The "continuity" prong is intended "to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992); *see also H.J. Inc.*, 492 U.S. at 239 ("RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff … must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.") (emphasis omitted); *Jennings*, 495 F.3d at 472 ("Congress passed RICO in an effort to combat organized, long-term criminal activity."). Paying heed to the continuity requirement ensures that RICO remains "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006); *see also Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001). The Seventh Circuit has noted that "no single formula is required for a RICO pattern," which means that the test is "necessarily less than precise," requiring the exercise of judgment and common sense. *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991); *see also Hartz v. Friedman*, 919 F.2d 469, 472 (7th Cir. 1990) ("The pattern requirement is difficult to define and requires courts to use common sense.").

There are two types of continuity, open-ended and closed-ended:

> Closed-ended continuity refers to criminal behavior that has ended but the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future. In contrast, open-ended continuity requires a showing of past conduct that by its nature projects into the future with a threat of repetition.

*DeGuelle*, 664 F.3d at 199 (citations and internal quotation marks omitted). Kostovetsky correctly argues that the complaint pleads open-ended continuity. Doc. 34 at 29. "Open-ended

13

continuity is present when (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Vicom, Inc., v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994) (alteration in original) (internal quotation marks omitted). In *Bible*, the plaintiff received a form default letter and a rehabilitation agreement after defaulting on her student loans. Both the letter and the agreement said that her "current collection cost balance" was zero, but a guaranty agency later assessed her over $4,500 in collection costs. The plaintiff argued that the letter and the agreement deceived her into thinking that no collection costs would be imposed if she entered into a rehabilitation program. In finding a pattern of racketeering, the Seventh Circuit explained:

> [The plaintiff] alleges that USA Funds, through its enterprise, unlawfully imposed collection costs on thousands of borrowers in default in the same manner it did to her. She alleges that USA Funds has sent the form document that became the rehabilitation agreement in this case more than 100,000 times over a period of several years. Bible also alleges that the conduct at issue is USA Funds' standard operating procedure and that it is continuous and ongoing. These allegations satisfy the relationship-plus-continuity test.

*Bible*, 799 F.3d at 660.

Kostovetsky's complaint is analogous to the complaint in *Bible*. Kostovetsky alleges that Defendants' misrepresentation of reduced energy costs was part of their "standard marketing pitch," Doc. 1 at ¶ 12; that this pitch is given to other Ambit consumers, as evidenced by the numerous customer complaints, *id.* at ¶¶ 47, 55-56; and that those "fraudulent activities are part of their ongoing business and constitute a continuing threat," *id.* at ¶ 90. These allegations, which must be assumed true on a Rule 12(b)(6) motion, allow the reasonable inference that Defendants are engaged in a pattern of racketeering activity. *See Equity Residential v. Kendall Risk Mgmt., Inc.*, 2005 WL 2007240, at *5 (N.D. Ill. Aug. 11, 2005) (holding that the plaintiffs sufficiently alleged a pattern of racketeering under the open-ended continuity theory by asserting

14

that the predicate acts "were part of a regular way of doing business" for the defendants) (internal quotation marks omitted); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202 (N.D. Ill. 1995) (holding that a "finding of open-ended continuity can be supported" for a RICO claim where "the scheme alleged by plaintiff ostensibly could last as long as Whitehall remains in operation").

Finally, Defendants argue that the complaint does not adequately plead proximate cause. Doc. 21 at 8-9; Doc. 43 at 21-22. A RICO plaintiff must allege an "injury to himself from at least one predicate act" by showing "some direct relation between the injury asserted and the injurious conduct alleged." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1004-05 (7th Cir. 2004) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269 (1992)). Defendants submit that Kostovetsky's monetary losses were caused by the Ambit consultant's oral misrepresentation—not by the Ambit entities' mail and wire fraud—and therefore that his injury is too attenuated from the predicate acts to establish proximate cause. Doc. 43 at 22. This argument reflects an overly narrow view of mail and wire fraud. As noted above, a mail or wire communication need not contain fraudulent material itself so long as the communication is sent as part of a scheme to defraud. *See Powell*, 576 F.3d at 493. Here, the false statements that Ambit consultants make to consumers are inextricably intertwined with both the fraudulent scheme in general and the Ambit entities' predicate acts in particular. Customers are induced to sign up with Ambit with false promises of savings and then they suffer out-of-pocket losses when their energy bills skyrocket; there is nothing indirect or tenuous about that causal link.

Defendants also argue that Kostovetsky cannot establish proximate cause because he did not plead that the consultants were Ambit's agents. Doc. 21 at 9. That argument is wrong. Even if an agency relationship were required in this context, Kostovetsky need not plead the legal

15

conclusion that the consultants are Ambit's agents. *See Polzin v. Ericksen*, 607 F. App'x 572, 574 (7th Cir. 2015) ("[F]ederal complaints need not cite law or develop legal theories."); *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) ("Plaintiffs need only plead facts, not legal theories, in their complaints."). All he must plead are facts that would plausibly give rise to an agency relationship, and the complaint does precisely that. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 478 F. Supp. 2d 1076, 1088-89 (S.D. Ind. 2007) (holding that a jury could find that a company's sales representatives were its agents). In any event, the consultants need not be Ambit agents for Defendants to be liable under RICO. All that matters is that the Ambit entities, Thompson, and Chambless coordinate with the consultants as part of an enterprise to perpetrate the scheme, which is what the complaint adequately alleges. *See Cox v. Sherman Capital LLC*, 2015 WL 3513889, at *4 (S.D. Ind. June 3, 2015) (rejecting the defendants' argument that the complaint had to plead agency because the RICO claims were premised not on an agency theory but on defendants' own conduct as participants in the enterprise's affairs). Accordingly, Kostovetsky has adequately pleaded proximate cause.

### B. Section 1962(d) Claim

Section 1962(d) makes it "unlawful … to conspire to violate" §§ 1962(a), (b), or (c). 18 U.S.C. § 1962(d). To state a § 1962(d) claim, the plaintiff must allege "that (1) the defendant[s] agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant[s] further agreed that someone would commit at least two predicate acts to accomplish these goals." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 734-35 (7th Cir. 2014) (alterations in original); *see also DeGuelle*, 664 F.3d at 204. The Seventh Circuit has stressed "that the touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would

constitute a violation of the substantive statute." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998). Like all conspiracies, a RICO conspiracy "does not require direct evidence of agreement; an agreement can be inferred from the circumstances." *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 961 (7th Cir. 1996).

Defendants incorrectly contend that the complaint fails to plead any facts that could plausibly suggest an agreement. Doc. 21 at 15. The nature of the fraudulent acts, together with the Ambit entities' interlocking character, common ownership, and overlapping personnel, allow for the reasonable inference that the Defendants coordinated their conduct as the result of an agreement. *See DeGuelle*, 664 F.3d at 192 (finding that "[a]lthough the complaint's allegations as to the existence of an agreement are sparse, at this stage in the proceedings, there are enough allegations to infer that an agreement existed"); *Nesbitt*, 2015 WL 1331291, at *17 ("From the detailed allegations of the role each defendant played in the operation of the enterprise over course of years, it is fair to infer that each willing participant in the enterprise agreed to participate in the scheme and that acts of wire or mail fraud would occur throughout the multi-year duration of the scheme.").

## II. Unjust Enrichment Claim

Defendants argue that the unjust enrichment claim should be dismissed because the complaint "fails to plead which state's law applies to" Kostovetsky's claim. Doc. 21 at 17. That argument is meritless; because Kostovetsky resides in Illinois, Illinois law likely applies to his unjust enrichment claim. Defendants also contend that the complaint's "failure to specify which state law applies to the proposed multi-state class … require[es] dismissal." *Ibid*. That argument is meritless as well; if class certification is granted, New Jersey law likely will apply to the unjust

17

enrichment claims of the New Jersey class members, Texas law likely will apply to the unjust enrichment claims of the Texas class members, and so on.

It may be that the unjust enrichment laws of the various States are different enough to preclude class certification on predominance or other grounds. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (decertifying a class in part because the class's claims would require adjudication under the law of so many jurisdictions that a single nationwide class would be unmanageable). That inquiry is premature at this point and best left to the class certification stage. *See Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) ("We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing."); 1 McLaughlin on Class Actions § 4:28 & n.25 (11th ed. 2014) ("[M]ost courts have rejected standing challenges to named plaintiffs who plainly have standing as to their personal claims, but also purport to represent a class, for example, with claims under the consumer protection laws of states in which the named plaintiffs do not reside.") (collecting cases).

## Conclusion

For the foregoing reasons, Kostovetsky's motion to strike is granted and Defendants' motion to dismiss is denied. Defendants shall answer the complaint by January 29, 2016.

January 8, 2016

United States District Judge